**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

TSI TECHNOLOGIES LLC,         )
         )
         Plaintiff,         )
         )      **CIVIL ACTION**
v.         )
         )      **No. 23-1011-KHV**
CFS BRANDS, LLC and DINEX,         )
         )
         Defendants.         )
_____)

## MEMORANDUM AND ORDER

On December 19, 2022, in the District Court of Sedgwick County, Kansas, TSI Technologies LLC filed suit against CFS Brands, LLC and Dinex. On January 26, 2023, defendants removed the action to federal court. On February 23, 2023, plaintiff filed an amended complaint which asserts claims for breach of contract, fraud and an accounting. This matter is before the Court on Defendants' Motion To Dismiss Plaintiff's Revised Amended Complaint For Failure To State A Claim And Memorandum In Support (Doc. #22) filed March 8, 2023. For reasons stated below, the Court sustains the motion in part.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678.   Plaintiff makes a facially plausible claim when it pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.   Id. However, plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" liability. Id. (quoting Twombly, 550 U.S. at 557).   A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.   Id.   Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief.   Id. at 679.   The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P.. depends on the type of case.   Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

### Factual And Procedural Background

Plaintiff's revised amended complaint alleges as follows:

In the late 1990s, plaintiff's predecessor company—Thermal Solutions, Inc.—developed an induction heating-based technology that is particularly useful in the food service industry.   In general, this technology allows for controlled induction heating and retention of heat in products, including food delivery products.

On October 5, 2001, Thermal Solutions and Dinex executed a Food Service Base License Agreement (the "License Agreement").   Under the License Agreement, Thermal Solutions agreed to help Dinex develop a food service base and granted Dinex a license to use specified

patents (the "Licensed Patents") to manufacture, use, market and sell the base.[1]

As successor to Thermal Solutions, plaintiff and Dinex worked to develop an initial design of a food service base.[2]  The initial design used technology protected by the Licensed Patents.  After evaluation, Dinex accepted the initial design.  Even so, the License Agreement required plaintiff to "be reasonably available to assist" Dinex in developing other food service bases.  Plaintiff and Dinex eventually developed a second version of the food service base ("the New Base").  Dinex hired Seitz Manufacturing Corporation to supervise the overall development of the New Base which utilizes technology protected by the Licensed Patents.  Dinex currently sells the New Base.  Plaintiff and Dinex designed the New Base to use the same induction chargers which defendants already sold to heat the food service bases.

Under the License Agreement, either plaintiff or Dinex could file for a patent to cover the application of technology in the Licensed Patents and any resulting patents were deemed to be Food Service Base Patents.  The License Agreement stipulated that plaintiff and Dinex would jointly own such patents and owe no additional royalties to each other.  The License Agreement required Dinex to pay royalties to plaintiff until the Licensed Patents and any other Food Service Base Patents expired.

On December 7, 2007, Brian Clothier, plaintiff's president, visited the offices of a third party which manufactured induction chargers for the Dinex bases.  Clothier saw that the latest Dinex base contained a patent pending mark.  On December 18, 2007, plaintiff emailed Rick

---

[1]     A "food service base" relates to induction heated servers for heating and/or maintaining the temperature of food on serving plates placed on it.

[2]     Because Thermal Solutions later assigned TSI Technologies, Inc. its rights under the relevant patents and License Agreement, the Court refers to Thermal Solutions and TSI Technologies collectively as plaintiff.

Runyon, a Dinex Vice President, "expressing alarm about its failure to inform plaintiff about a new patent application of which plaintiff was clearly a joint owner under the [License] Agreement."  Four days later, Runyon told plaintiff that the pending patent related to a plastic molding process and had nothing to do with the License Agreement.  Runyon offered to send a copy of the patent application when it was finalized.  Because of the close relationship between plaintiff and Dinex, plaintiff took Runyon at his word but still requested a copy of the patent application so that it could make its own assessment of the accuracy of Runyon's statements. Dinex never provided the application or any further information about the new patent.

On January 30, 2008, Dinex and Seitz filed a patent application with the U.S. Patent Office.  The application described terminology similar to that used in the Licensed Patents and clearly described the functionality of plaintiff's patented technology.  Dinex and Seitz later filed a replacement application, with minimal changes.   On January 22, 2013, based on the replacement application, the U.S. Patent office issued Patent No. 8,357,882 (the "882 Patent").

The 882 Patent is a Food Service Base Patent, as defined in the License Agreement, because it involves the application of technology in the Licensed Patents.  Plaintiff was unaware of the contents of the 882 Patent and applications.  On May 20, 2021, Clothier discovered that the current Dinex Food Service Base was marked with the 882 Patent number.

On May 22, 2022, the last Licensed Patent expired.  In August of 2022, defendants sent plaintiff a royalty payment for sales of food service bases during the second calendar quarter. The payment included royalties for sales in April and May of 2022.  Defendants did not pay royalties for sales of the food service bases after May of 2002.

An addendum to the License Agreement required defendants to provide plaintiff a statement from defendants' accounting firm which certified the accuracy of royalty payments for

-4-

fiscal years ending after June 1, 2008.  Defendants have not provided such statements.

On December 19, 2022, in the District Court of Sedgwick County, Kansas, plaintiff filed an amended petition against CFS Brands and Dinex, which currently is a division of CFS Brands.  On January 26, 2023, defendants removed this action to federal court.  Plaintiff asserts claims for breach of contract (Count I), fraud by misrepresentation and by silence (Count II) and an accounting (Count III).  Defendants seek to dismiss all counts.

<u>**Analysis**</u>

## I.     **Count I – Breach Of Contract**

Plaintiff alleges that by ceasing to pay royalties on sales of food service bases after May of 2022, defendants breached the License Agreement.  Specifically, plaintiff asserts that under the License Agreement, it is a joint owner of the 882 Patent and is therefore entitled to royalties for sales of Dinex food service bases marked by the 882 Patent.  Defendants argue that the statute of limitations and the doctrine of patent misuse bars plaintiff's breach of contract claim.

### A.     **Statute of Limitations**

Defendants argue that because plaintiff did not file a claim within five years from the issuance of the 882 Patent in 2013, the statute of limitations bars its claim for breach of contract.  Plaintiff responds that its claim for breach of contract did not accrue until May of 2022, when defendants failed to pay royalties on further sales of the food service base.

The parties do not dispute that Kansas law applies and that the statute of limitations is five years.  K.S.A. § 60-511(1) (action upon written contract shall be brought within five years).  The statute of limitations for contract claims begins to run when defendants allegedly breach the contract.   <u>Voth v. Chrysler Motor Corp.</u>, 218 Kan. 644, 651, 545 P.2d 371, 377 (1976).  Defendants argue that when they filed the original patent application in 2008, plaintiff was on

notice of its contents, which triggered the statute of limitations.  Plaintiff alleges, however, that defendants did not cease paying royalties for sales of their food service base until May of 2022, when all the patents under the License Agreement—except for the 882 Patent—had expired. Because the complaint alleges that defendants first breached the License Agreement in May of 2022, the statute of limitations does not bar plaintiff's claim for breach of contract.

### B.   Patent Misuse

Defendants argue that the doctrine of patent misuse bars plaintiff's claim for breach of contract.  Defendants bear the burden on the affirmative defense of patent misuse.  See Cal. Expanded Metal Prods. Co. v. Klein, 426 F. Supp. 3d 730, 755 (W.D. Wash. 2019).  In the complaint, plaintiff need not anticipate an affirmative defense that defendants may assert. Fernandez v. Clean House, LLC, 883 F.3d 1296, 1299 (10th Cir. 2018).  Because defendants have not filed an answer, they can prevail on their patent misuse defense only if the complaint itself alleges—and therefore admits—all the elements of the affirmative defense.  See id.

When a patent expires, a "patentee's prerogatives expire too, and the right to make or use the article, free from all restriction, passes to the public."  Kimble v. Marvel Ent., LLC, 576 U.S. 446, 451 (2015).  Under the doctrine of patent misuse "a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."  Brulotte v. Thys Co., 379 U.S. 29, 32 (1964).

Defendants argue that plaintiff can prevail on its breach of contract claim only if the 882 Patent is an "application of technology" represented by the Licensed Patents.  Revised Amended Complaint (Doc. #19), ¶ 16.  Defendants maintain that if the License Agreement covers the 882 Patent, it necessarily runs afoul of Brulotte, which prohibits a license agreement from requiring royalties for application of technology in expired patents.  Plaintiff alleges, however, that under

-6-

the License Agreement, it jointly owns the 882 Patent.  <u>See id</u>.  Because the 882 Patent has not

expired, plaintiff has not affirmatively pled the elements of patent misuse under <u>Brulotte</u>, <u>i.e.</u> that

plaintiff seeks to recover royalties that project beyond the expiration date of the patent.  <u>See</u>

<u>Fernandez</u>, 883 F.3d at 1299 (only when plaintiff pleads all elements of defense may complaint

that otherwise states claim be dismissed under Rule 12(b)(6)).  The Court therefore overrules

defendant's motion to dismiss Count I based on its affirmative defense of patent misuse.  <u>See</u>

<u>C.R. Bard, Inc. v. Atrium Med. Corp.</u>, No. CV-21-00284-PHX-DGC, 2021 WL 4774948, at *2

(D. Ariz. Oct. 13, 2021) (on motion to dismiss, not addressing whether royalty provision

constitutes patent misuse because more complete factual record necessary to make fine line

determination between lawful and unlawful conduct under <u>Brulotte</u>).[3]

## II.     Count II – Fraudulent Misrepresentation And Fraud By Silence

Plaintiff alleges that Dinex (1) fraudulently misrepresented that the 882 Patent "had

nothing to do with a Food Service Base Patent," but related to "a new plastic molding process

largely developed by a third party," and (2) "continued to remain silent as to this representation"

in 2013 when the new patent was granted.  <u>Revised Amended Complaint</u> (Doc. #17), ¶¶ 48, 51.

Defendants argue that both fraud claims fail to state a claim on which relief can be granted.[4]

Rule 9(b) requires that in "alleging fraud or mistake, a party must state with particularity

---

[3]     Neither party has requested that the Court convert defendants' motion to dismiss
into one for summary judgment.  The Court rejects defendants' invitation to resolve at this stage
what apparently are disputed factual issues (1) whether the issuance of the 882 Patent necessarily
means that it was not a Food Service Base Patent under the License Agreement and (2) whether
plaintiff was a joint owner of the 882 Patent before the Licensed Patents expired.  The Court can
better resolve these issues on a motion for summary judgment or at trial.

[4]     Defendants also argue that the statute of limitations bars both fraud claims.
Because plaintiff has not stated a claim for fraud, the Court need not address defendants'
alternative argument.

the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 522 (10th Cir. 2013) (quotations and citation omitted).  In other words, Rule 9(b) requires that plaintiff allege the who, what, where, when and how of the alleged fraud.  Clinton v. Sec. Benefit Life Ins. Co., 63 F.4th 1264, 1277 (10th Cir. 2023).  For a fraudulent concealment claim, plaintiff must allege with particularity any facts that would have prevented it from knowing the concealed facts and that its ignorance of these facts was not the result of its own lack of diligence.  Andes Cap. Fin. LLC v. Crossed Keys LLC, No. 21-1270-KHV, 2022 WL 1658861, at *10 (D. Kan. May 25, 2022).

A.   Fraudulent Misrepresentation

To prevail on a claim for fraudulent misrepresentation, plaintiff must establish that (1) defendants made an untrue statement of fact, (2) they knew it was untrue, (3) they made it with the intent to deceive plaintiff or with reckless disregard for the truth, (4) plaintiff justifiably relied on the statement and (5) plaintiff acted to its injury and damage.  Gerhardt v. Harris, 261 Kan. 1007, 1013, 934 P.2d 976, 981 (1997).

Plaintiff alleges that on December 22, 2007, defendants fraudulently represented that the 882 Patent had nothing to do with a Food Service Base Patent under the License Agreement, but related to "a new plastic molding process largely developed by a third party." Revised Amended Complaint (Doc. #17), ¶ 48.  Defendants argue that plaintiff has failed to allege that at that time, defendants intentionally made the statement to deceive plaintiff or recklessly made the statement with disregard for its truth.  Plaintiff does not respond to this argument.  Plaintiff alleges only that defendants' statement was a "falsehood." Id.  This barebones allegation is insufficient under

-8-

the heightened pleading standard of Rule 9(b).  The Court therefore sustains defendants' motion to dismiss plaintiff's claim for fraudulent misrepresentation.[5]

B.    Fraud By Silence

Plaintiff alleges that in 2021—after it learned that Dinex's prior statement that the 882 Patent "had nothing to do with a Food Service Base Patent" was false—defendants "continued to remain silent as to this representation" in 2013 when the new base patent was granted.  Revised Amended Complaint (Doc. #17), ¶¶ 48, 50–51.  To establish fraud by silence, plaintiff must show that (1) defendants had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) defendants were under an obligation to communicate the material facts to plaintiff; (3) defendants intentionally failed to communicate to plaintiff the material facts; (4) plaintiff justifiably relied on defendants to communicate the material facts to plaintiff and (5) plaintiff sustained damages as a result of defendants' failure to communicate the material facts to the plaintiff.  OMI Holdings, Inc. v. Howell, 260 Kan. 305, 344–45, 918 P.2d 1274, 1299 (1996).

Defendants argue that plaintiff has not alleged facts which establish that (1) plaintiff could not have discovered the information withheld through the exercise of reasonable diligence,

---

[5]       Defendants have not raised the issue, but the complaint does not allege facts to establish that except as to defendants' non-payment of compensation under the contract, plaintiff sustained damage on either fraud claim.  Plaintiff alleges that defendants' fraud robbed it of the "fruits of the ownership of a patent for the New Base," Revised Amended Complaint (Doc. #17), ¶ 52, but such fruits of ownership would not be any broader than its damages for defendants' alleged breach of contract.  At the time of the alleged fraud and fraudulent nondisclosure, the parties had already executed the License Agreement.  Plaintiff essentially claims that defendants falsely stated that plaintiff was not entitled to compensation for the new patent under the License Agreement and did not disclose that plaintiff in fact was entitled to such compensation.  Both claims appear to sound only in contract and do not give rise to separate fraud claims.  See Reuben H. Donnelley Corp. v. Mark I Marketing Corp., 893 F. Supp. 285, 290 (S.D.N.Y. 1995) (concealment of breach insufficient to transform breach of contract action into one for fraud).

(2) defendants had a duty to communicate the alleged fact to plaintiff and (3) plaintiff justifiably relied on defendants to communicate the alleged fact.  For reasons stated below, the Court finds that defendants' first and second arguments—to which plaintiff has not responded—compel dismissal of plaintiff's complaint.[6]

Defendants correctly note that plaintiff has failed to allege facts to establish that even with reasonable diligence, it could not have discovered the truth of defendants' alleged misrepresentation.  The allegation that plaintiff took defendants at their word based on the nature of their relationship does not establish that plaintiff could not have discovered whether the patent application and resulting patent were within the scope of the License Agreement.  Indeed, plaintiff alleges that it requested a copy of the patent application "so that it could make its own assessment" of the accuracy of defendants' statement.  Revised Amended Complaint (Doc. #17), ¶ 35.  The complaint does not allege why plaintiff did not follow up in reviewing the patent application or that defendants somehow prevented it from doing so.  Absent such an allegation or other facts to suggest that plaintiff could not have discovered the truth of the statement, i.e. the actual content of the patent application, plaintiff has failed to state a claim for fraud by silence.

In addition, an essential element of a fraud by silence claim is that defendants had a duty to communicate material facts to plaintiff.  See OMI Holdings, 260 Kan. at 345, 918 P.2d at 1299.  The complaint sets forth an arms-length transaction which resulted in a License Agreement between plaintiff and defendants.  Even if the Court assumes that defendants had

---

[6]        The complaint also appears to not allege facts to establish that after plaintiff learned of the patent application, it justifiably relied on defendants to communicate whether the License Agreement covered the new patent.  See Ray Larsen Assocs. v. Nikko Am., Inc., No. 89-2809, 1996 WL 442799, at *5 (S.D.N.Y. Aug. 6, 1996) (no duty to disclose where alleged omission occurred after contract formed—as part of breach of contract—rather than before or during negotiation).  Because plaintiff has not addressed two other elements of its fraud by silence claim, the Court declines to address this issue.

superior knowledge and therefore had a duty to tell plaintiff that they were filing an application that could result in a patent potentially covered by the License Agreement, plaintiff already knew this.  Plaintiff alleges no facts and cites no authority to establish that defendants had an additional duty to correctly inform plaintiff whether the new patent fell within the scope of the License Agreement.  Cf. Sprint Commc'ns Co. L.P. v. Time Warner Cable, Inc., No. 11-2686-JWL, 2017 WL 978107, at *3 (D. Kan. Mar. 14, 2017) (where both parties knowledgeable and experienced enterprises engaged in arm's-length transactions, rejecting argument that Sprint had duty to speak because it had superior knowledge about its own patents).  In this regard, neither party knew for certain whether a court would later find that the License Agreement covered the new patent.  Because plaintiff has failed to allege facts which establish that defendants had a duty to correctly disclose whether the License Agreement covered the new patent, plaintiff has failed to state a claim for fraud by silence.

For these reasons, the Court dismisses plaintiff's fraud claims for failure to state a claim on which relief can be granted.

## III.    Count III – Accounting

Plaintiff alleges that because defendants failed to provide it with accounting statements for fiscal years after June 1, 2008, they breached the addendum to the License Agreement. Defendants argue that the parties modified the agreement by their course of conduct, by which plaintiff waived its right to the accounting statements.  Plaintiff argues that defendants cannot rely on waiver because it is an affirmative defense and defendants cannot show clean hands.

Waiver is an affirmative defense.  See Fed. R. Civ. P. 8(c)(1).  As with defendants' patent misuse defense, because defendants have not filed an answer, they can prevail on their waiver defense only if the complaint itself alleges—and therefore admits—all the elements of the

affirmative defense.  Fernandez, 883 F.3d at 1299.

Waiver is ordinarily the intentional relinquishment of a known right and is a voluntary act.  Flott v. Wenger Mixer Mfg. Co., 189 Kan. 80, 90, 367 P.2d 44, 51 (1961).  Even so, a court may infer waiver from conduct.  Id.

Plaintiff has not alleged facts which establish that it knowingly and intentionally waived the right to receive annual accounting statements.  Defendants argue that based on their course of conduct, the parties modified their agreement.  The complaint itself, however, does not allege that the parties modified their agreement and the complaint's factual allegations by themselves are insufficient to establish such a modification as a matter of law.  Cf. Duling v. Mid Am. Credit Union, 63 Kan. App. 2d 428, 435, 530 P.3d 737, 744 (2022) (whether particular term of written contract has been modified or waived by later agreement is question of fact); Matter of Ross, No. 78,049, 1998 WL 36035511, at *3 (Kan. Ct. App. Aug. 21, 1998) (type of conduct sufficient to give rise to waiver generally is question of fact).  In addition, plaintiff argues that defendants cannot rely on waiver because they have unclean hands.[7]  Again, based solely on the allegations of the complaint, the Court declines to determine whether to exercise its discretion to apply the doctrine of unclean hands.  See T.S.I. Holdings, 260 Kan. at 720, 924 P.2d at 1250 (unclean hands doctrine not binding rule, but court may apply doctrine in its discretion).  The Court therefore overrules defendant's motion to dismiss as to plaintiff's claim for an accounting.

---

[7]     The clean hands doctrine provides in substance that "no person can obtain affirmative relief in equity with respect to a transaction in which the person has been guilty of inequitable conduct."  T.S.I. Holdings, Inc. v. Jenkins, 260 Kan. 703, 720, 924 P.2d 1239, 1250 (1996).  The application of the doctrine, however, is subject to certain limitations.  Green v. Higgins, 217 Kan. 217, 220–21, 535 P.2d 446, 449 (1975).  Conduct which will render a party's hands unclean so as to deny it access to a court of equity must be willful conduct, i.e. fraudulent, illegal or unconscionable.  Id.  Moreover, "the objectionable misconduct must bear an immediate relation to the subject-matter of the suit" and in some measure, "affect the equitable relations subsisting between the parties to the litigation and arising out of the transaction."  Id.

**IT IS THERFORE ORDERED** that Defendants' Motion To Dismiss Plaintiff's Revised Amended Complaint For Failure To State A Claim And Memorandum In Support (Doc. #22) filed March 8, 2023 is **SUSTAINED in part.  The Court dismisses Count II of plaintiff's Revised Amended Complaint (Doc. #17) for failure to state a claim on which relief can be granted.  The motion is otherwise overruled.**

Dated this 27th day of September, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge